IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH SIMMONS,

    Plaintiff,

v.                                                                                                  No. 9-CV-787 WJ/WDS

WALGREEN CO. and WALGREEN
HASTINGS CO.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S DISABILITY, AGE AND RETALIATION CLAIMS**

THIS MATTER comes before the Court on Defendants' Motion to Dismiss Plaintiff's Disability, Age and Retaliation Claims (Doc. 39). Because Plaintiff failed to properly exhaust his administrative remedies prior to filing suit, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Disability, Age and Retaliation Claims.

**BACKGROUND**

Plaintiff Joseph Simmons worked for Defendant Walgreen Co. from 2004 to 2008. Sometime in late 2007, Simmons was demoted and moved to another store, which resulted in a reduction in his pay. In early 2008, Simmons began to experience nausea and vomiting at work—symptoms which, he discovered months later, were due to cancer. He consulted with Dr. Andrew Bustos, Walgreens' district manager, who advised Simmons to get a supporting note from his doctor and apply for disability leave. Shortly thereafter, Harry Bachman, Walgreens' loss prevention manager, suspended Simmons for theft. Specifically, he accused Simmons of taking a tube of Lidex, valued at $36.98, without paying for it or having a valid prescription for

the drug.  Simmons admitted that he had taken the drug home, but explained that it was merely an oversight due to his sickness and that he had not intended to steal anything.  When Simmons returned to work on May 5, 2008[1] after his suspension, he was terminated for the theft.

Following his termination, Simmons was not paid for his approximately 15 days of accrued sick leave.  In addition, on the date of his termination, Defendant Walgreens informed Simmons that his termination for theft could be posted on a third-party database accessible to prospective employers.  Shortly thereafter, Walgreens provided ChoicePoint, a national data compilation organization with whom Walgreens had an agreement, with access to Simmons' employee file.  ChoicePoint posted information regarding Simmons' termination for theft on its "Esteem" database, which is accessible to subscribing corporate members who want to obtain information about prospective employees.  Finally, sometime in 2008 right around the date of Simmons' termination, Mr. Bachman filed a complaint against Simmons with the New Mexico Board of Pharmacy related to the alleged theft.  Simmons appeared before the Board in August 2008.  According to the Plaintiff, the matter has not yet been resolved.

Approximately one month after his termination, Simmons sought legal advice from an attorney who informed him that it was too late to file an unlawful discrimination charge with the EEOC.  In early 2009, Simmons consulted with a different attorney who assured him that he was not yet past the deadline for filing a charge of discrimination with the EEOC.  She told Simmons that she would prepare a statement for him to file with the EEOC.  On April 9, 2009, one day after receiving her statement in the mail, Simmons filed his charge with the EEOC.  In that charge, Simmons claimed discrimination only on the basis of disability.  Several weeks later,

---

[1] Defendant contends that Plaintiff was actually terminated on April 30, 2008. Regardless, the six-day difference in dates makes no difference to the analysis here.

Simmons received a dismissal notice from the EEOC informing him that his discrimination charge on the basis of disability was not timely filed. In November 2009, Simmons filed a second charge with the EEOC—this time alleging age discrimination and retaliation for filing his first EEOC charge. In the meantime, Simmons filed this lawsuit in August 2009 alleging age discrimination, discrimination due to disability and retaliation, as well as state tort claims for wrongful termination, defamation, and intentional and reckless infliction of emotional distress. Now, Defendants ask this Court to dismiss Plaintiff's discrimination and retaliation claims for failure to exhaust administrative remedies.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. When ruling on a 12(b)(1) motion, a court has broad discretion to consider affidavits, an administrative record, or other documents necessary to resolve disputed jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Here, Defendants allege that the Court does not have subject matter jurisdiction over several claims in this case because the Plaintiff did not properly exhausted his administrative remedies prior to filing suit. Exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 12111, *et seq.*, and the New Mexico Human Rights Act ("NM Human Rights Act"). *See McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002) (exhaustion required under the ADA); 29 U.S.C. §§ 262(d)(2), 633(b) (exhaustion required under the ADEA); *Jaramillo v. J.C. Penny Co.*, 694 P.2d 528 (N.M. Ct. App. 1985) (exhaustion required under the NM Human Rights Act). Accordingly, this Court must first determine whether Plaintiff has properly exhausted his remedies with respect to each

claim before addressing the merits of these claims.

## DISCUSSION

In order to properly exhaust one's administrative remedies under the ADA, the ADEA and the NM Human Rights Act, a plaintiff must file a charge alleging discrimination within 300 days after the alleged unlawful practice occurred. Otherwise, the charge is time-barred. The Court will address the timeliness of Simmons' disability discrimination, age discrimination and retaliation claims in turn.

Disability Discrimination Claims. Simmons has asserted claims of discrimination on the basis of disability under both the ADA and the NM Human Rights Act. His disability discrimination claims arise out of his termination on May 5, 2008. *See* Defendants' Exhibit A, EEOC Charge of Discrimination, April 9, 2009 (claiming that he was terminated from his position because of his disability). On the EEOC form, Simmons specifically noted that the latest instance of disability discrimination occurred on May 5, 2008. *Id.* These claims are barred, however, because Simmons did not file his charge of disability discrimination with the EEOC until April 9, 2009—more than 300 days after his termination occurred on May 5, 2008. Simmons' disability discrimination claim was filed over a month late and is, therefore, barred as untimely.

Age Discrimination Claims. Simmons has also asserted claims of age discrimination under the ADEA and the NM Human Rights Act. His age discrimination claims arise out of his 2007 demotion, his 2008 termination, and Walgreens' decision to share information about his termination with a third party. *See* Second Amended Complaint (Doc. 35), ¶¶ 7-9. These claims are clearly barred in so far as they relate to the 2007 demotion and the 2008 termination. Simmons did not file a charge of age discrimination with the EEOC until November

4

2009—more than 300 days after his demotion in 2007 and his termination in May 2008. *See* Defendants' Exhibit B, EEOC Charge of Discrimination, November 17, 2009 (claiming discrimination on the basis of age and retaliation). His age discrimination claims are also barred in so far as they relate to Walgreens' decision to share information about his termination with ChoicePoint. Simmons admits that Walgreens specifically informed him, on the date of his termination, that it was required to relay the reason for his termination to ChoicePoint, and that ChoicePoint could choose to post that information to their national database. *See* Defendants' Exhibit 1, Simmons Dep., at 74 ("They gave me a paper when they dismissed it saying they were reporting this as theft to this national database."); *id.* at 195-96 ("I got this notice when they terminated me that it was reporting to [Esteem], they said. So I knew they had been reported to somebody."). Walgreens claims, and Simmons does not dispute, that it reported the theft to ChoicePoint at the end of April 2008. Again, however, Simmons did not file his charge of age discrimination with the EEOC until November 2009—more than 300 days after Walgreens' decision to relay this information to ChoicePoint.[2]

Simmons argues that Walgreens' decision to share this information constitutes a

---

[2] Simmons briefly argues that his November 2009 charge "relates back" to his April 2009 charge. For various reasons, the relation-back doctrine does not apply here. An amendment to a charge of discrimination can only relate back to the date of the original charge if it (1) corrects technical defects or omissions; (2) clarifies or amplifies allegations made in the original charge; or (3) adds additional Title VII violations "related to or growing out of the subject matter of the original charge." *Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Here, Simmons' November 2009 charge cannot relate back to his April 2009 charge because he alleges entirely separate claims of discrimination in the two charges. "[A] party's failure to mark a box for a particular type of discrimination creates a presumption that the complainant is not asserting claims under those theories." *Otero v. Family Dollar Stores of New Mexico, Inc.*, Civ. No. 7-739, Memorandum Opinion and Order Granting Defendant's Motion to Dismiss on Retaliation Claim, at 3 (D.N.M. 10/25/07). Nothing in Simmons' April 2009 charge suggests that he is asserting—or could assert—claims of age discrimination or retaliation. Accordingly, the relation-back doctrine does not apply.

"continuing violation" of his rights because the information has been continuously published on the Esteem database since the date of his termination.  Under the continuing violation theory, a plaintiff may sue on the basis of discriminatory actions which occurred more than 300 days ago if those acts are part of a pattern of repeated conduct which *itself* forms the violation.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  This theory applies when the individual acts themselves do not constitute a violation, but the combined effect of the repeated instances do constitute a violation.  *Id.* ("The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."). Here, however, Walgreens' decision to relay the information to ChoicePoint occurred on a particular day and was immediately actionable.  Discrete acts, according to the Supreme Court, must be objected to within the 300 day period.  "[D]iscrete discriminatory acts are not actionable if time barred . . . .  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred."  *Id.* at 113.  Because Walgreens' act of relaying information to ChoicePoint constitutes a discrete act which occurred on a particular day, the continuing violation theory is not applicable.[3]  Accordingly, Plaintiffs' claims of age discrimination are untimely.

    Retaliation Claims.  Finally, Simmons has asserted retaliation claims under all three statutes—the ADA, the ADEA and the NM Human Rights Act.  His retaliation claims arise out

---

[3] Furthermore, the parties do not dispute that ChoicePoint, not Walgreens, publishes and maintains information on the Esteem database.  Walgreens' only acted once by relaying Simmons' termination information to ChoicePoint initially in April 2008.  Plaintiff does not argue that Walgreens has furnished ChoicePoint with additional information since then.

Walgreens' failure to pay him accrued sick leave, Walgreens' decision to file a claim against him with the New Mexico Board of Pharmacy, and Walgreens' decision to relay information about his termination to ChoicePoint. Simmons claims that Walgreens took these actions in retaliation for his decision to file discrimination charges with the EEOC. For the reasons given above, Simmons cannot assert any claims arising out of Walgreens' decision to relay information about his termination to ChoicePoint. That transfer of information occurred on a specific date at the end of April 2008—more than 300 days before Simmons filed his retaliation charge with the EEOC in November 2009. Furthermore, Simmons did not file his first charge of discrimination with the EEOC until April 2009. Walgreens could not have retaliated against Simmons in April 2008 for an act that Simmons did not take until April 2009.

Simmons' other retaliation claims suffer from the same flaws. First, he alleges that Walgreens' failure to pay him his accrued sick leave constitutes retaliation for his discrimination charges. Walgreens argues that it does not owe sick leave to employees who are terminated for theft. More importantly, however, it notes that any payment due was due upon Simmons' termination, not at some later time. *See* N.M. Stat. Ann. §50-4-4 (1978) (payment due to discharged employees within 5-10 days). Accordingly, the failure to pay accrued sick leave constitutes a discrete, isolated act which was immediately actionable within days of Simmons' termination in May 2008. It is not subject to the continuing violation theory. Because Simmons did not file his retaliation charge with the EEOC until November 2009, more than 300 days after his termination, this claim is untimely. Furthermore, as noted above, Walgreens could not have retaliated against Simmons in May 2008 for filing discrimination charges since Simmons did not file any charges with the EEOC until April 2009.

Second, Simmons alleges that Walgreens' decision to file a complaint with the New

7

Mexico Board of Pharmacy constitutes an act of retaliation for filing discrimination charges. Mr. Bachman, Walgreens' loss prevention manager, filed the complaint with the Board sometime in the summer of 2008. At the latest, the complaint was filed in August 2008, when Simmons was called to appear before the Board in relation to the complaint. However, Simmons did not file his retaliation charge with the EEOC until November 2009, more than 300 days after Mr. Bachman filed the complaint. Again, Mr. Bachman's decision to file the complaint constitutes a discrete, isolated act which was immediately actionable. It is not subject to the continuing violation theory, and Simmons has not alleged that Walgreens took any additional action with the Board or pursued the complaint in any way. Accordingly, this claim of retaliation is untimely. Furthermore, Walgreens could not have retaliated against Simmons in August 2008 (the latest date the complaint could have been filed with the Board) for filing discrimination charges since Simmons did not file any charges with the EEOC until April 2009.

<u>Equitable Tolling</u>. Finally, Simmons argues that the Court should equitably toll the 300-day statutory period and deem his claims timely. He cites his attorney's failures to adequately assist him and his physical impairment as reasons to toll the statutory period. Response, at 14. He notes that the first attorney he consulted wrongly informed him that the EEOC deadline for filing claims had already passed. The second attorney he consulted told him that his claims were indeed timely. Because Simmons was undergoing chemotherapy at the time, the attorney offered to write his statement for the EEOC. Simmons submitted his charge with the EEOC the day after he received the statement in the mail.

The Court declines to apply equitable tolling to this case. While the Court is sympathetic to Simmons' situation, the Supreme Court has made it clear that equitable tolling should be used only "sparingly" and should not be applied to cases involving a "garden variety claim of

excusable neglect." *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990). Furthermore, the Tenth Circuit has generally limited equitable tolling to extraordinary situations—such as "when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, [or] . . . 'if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights.'" *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001) (quoting *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267) (10th Cir. 1996)). Here, Simmons has not alleged any extraordinary circumstances. He does not claim any active deception by Walgreens, the EEOC or this Court. Furthermore, merely attorney negligence does not justify equitable tolling. *See Hall v. UPS*, 101 Fed. Appx. 764, 766 (10th Cir. 2004) (unpublished). Accordingly, the principles of equitable tolling do not apply here.

## CONCLUSION

Plaintiff Simmons failed to exhaust his administrative remedies with respect to his discrimination and retaliation claims prior to filing this suit. Accordingly, those claims are untimely and time-barred. For the reasons given above, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Disability, Age and Retaliation Claims. The Court will continue to exercise diversity jurisdiction over the remaining state law claims in this case.

**SO ORDERED.**

UNITED STATES DISTRICT JUDGE