**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOSEPH SIMMONS,

    Plaintiff,

v.                                                            No. 9-CV-787 WJ/WDS

WALGREEN CO. and WALGREEN
HASTINGS CO.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendants' Memorandum Motion for Summary Judgment on All Claims (Doc. 51). Because there is no genuine issue of material fact in this case and Defendants are entitled to judgment as a matter of law, the Court GRANTS Defendants' Memorandum Motion for Summary Judgment on All Claims.

**BACKGROUND**

The instant Motion requests judgment on all of Plaintiff's claims, but the Court has already dismissed the claims arising under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the New Mexico Human Rights Act ("HRA"). Memorandum Opinion and Order (Doc. 53). Accordingly, this Memorandum Opinion will address only Plaintiff's remaining claims: wrongful termination, defamation, and intentional infliction of emotional distress. The parties also dispute the extent of the damages available by law, but as there is no liability in this case, the Court does not reach the issue of damages. The Court exercises jurisdiction over the state law claims under 28 U.S.C. § 1332.

The relevant facts of this case have been fully set forth in the Court's Memorandum Opinion and Order at 1-3 (Doc. 53), and, therefore, will not be restated in this opinion.

## STANDARD OF REVIEW

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

## DISCUSSION

**I.    Wrongful Termination**

New Mexico law recognizes the employment at-will doctrine, which recognizes that "employment . . . is for an indefinite period and is terminable at the will of either party." *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 779 (N.M. 1993). There are two exceptions to this doctrine, either of which can give rise to liability for wrongful discharge: (1) when the words or conduct of the employer give rise to an implied contract, and (2) when the discharge is retaliatory or wrongful in violation of public policy. *Id.* "A general allegation that the discharge contravened public policy is insufficient; to state a cause of action for retaliatory or abusive

discharge the employee must identify a specific expression of public policy." *Maxwell v. Ross Hyden Motors, Inc.*, 722 P.2d 1192, 1196 (N.M. Ct. App. 1986).

Plaintiff argues that his employment with Defendants was wrongfully terminated under the second exception to the at-will doctrine. He identifies two alleged violations of public policy on the part of Defendants: first, discrimination on the basis of "age and serious mental illness/disability," and second, "a false allegation of criminal theft." Pl.'s Resp. at 15 (Doc. 54). Plaintiff cites no legal authority whatsoever for the proposition that either of these acts violate New Mexico public policy, and has not pointed to any "specific expression" of public policy in this state. Even liberally construing Plaintiff's pleadings,[1] however, the Court finds that neither allegation is sufficient to state a claim of wrongful discharge under state law.

A.  Discrimination

Defendants argue that Plaintiff cannot establish his tort claim with arguments based on discrimination, because federal statutes provide the exclusive remedy for discrimination and Plaintiff has not exhausted his remedies as required under those federal statutes. Defs.' Reply at 5& n.4 (Doc. 55). It is state law, however, that applies to this case. *See* Joint Status Report at 2 (Doc. 41). Under state law, Defendants' argument fails. In 1983, the New Mexico Court of Appeals held that the tort of wrongful discharge can be based on public policy exceptions to at-will employment. *Vigil v. Arzola,* 699 P.2d 613 (N.M. Ct. App. 1983), *overruled in part on other grounds by Chavez v. Manville Prods. Corp.*, 777 P.2d 371, 378 (1989). Specifically, the

---

[1] Plaintiff's Response to Defendants' Motion for Summary Judgment at 14-15 (Doc. 54) was devoid of any legal authority, so the Court was forced to "liberally construe" Plaintiff's pleadings, much the same way that pleadings filed by pro se plaintiffs are construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se pleadings to be held to "less stringent standards than formal pleadings drafted by lawyers").

*Vigil* court found that an employee who was terminated for complaining about embezzlement of federal funds to his employer stated a cause of action for retaliatory discharge under the public policy exception. *Id.* at 621. In 1994, the New Mexico Supreme Court considered the matter at length in *Gandy v. Wal-Mart Stores, Inc.*, and held that claims cognizable under the New Mexico Human Rights Act ("HRA"), NMSA 1978, §§ 28-1-1 to -15, such as employment discrimination, can also form the basis for a cause of action for retaliatory or wrongful discharge. 872 P.2d 859 (N.M. 1994); *see also Hicks-Wagner v. Qwest, Inc.*, 462 F. Supp. 2d 1163, 1175 (D.N.M. 2006). Under *Gandy*, it is clear that state law recognizes the type of employment discrimination remediable under various federal statutes as a basis for the tort of wrongful discharge.

      Defendants rely on *McDonald v. Corrections Corp. of America*, 181 F. Supp. 2d 1274 (D.N.M. 2002), and Memorandum Opinion and Order at 40-42, *Mayo v. Fowler Fitness, Inc.*, No. 02cv222 (D.N.M. Oct. 8, 2003) (ECF No. 99), *aff'd*, 110 Fed. App'x 69 (10th Cir. 2004). These opinions, however, rely on cases that are outdated since the supreme court decided *Gandy*, such as *Salazar v. Furr's, Inc.*, 629 F. Supp. 1403, 1408 (D.N.M. 1986), which held that where a remedy exists under a federal statute such as Title VII, the tort of wrongful discharge will not lie. *Salazar* reached this conclusion by limiting *Vigil* to its facts, but post-*Gandy*, this is no longer good law. The other cases relied on in *McDonald* and *Fowler Fitness* simply fail to provide support for the proposition. *E.g.*, *Parker v. John Q. Hammons Hotels, Inc.*, 914 F. Supp. 467, 471 (D.N.M. 1994) (dismissing plaintiff's claim of retaliatory discharge for failing to specify a specific expression of public policy); *Jeffers v. Butler*, 762 F. Supp. 308, 310 (D.N.M. 1990) (no public policy claim when the statute specified is for the benefit of an individual only).

      Based on the foregoing, the Court finds that under state law, discharge of an employee

due to age or disability discrimination by an employer clearly violates New Mexico public policy as expressed in the New Mexico HRA. When a wrongful discharge claim is based on public policy as embodied in a statute, the claim is analyzed in the same manner as a claim brought under the statute itself. *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 341 (N.M. 2001). The legal standard under the HRA mirrors federal law under the Americans with Disabilities Act. *Id.* at 338. "[I]n order to maintain a disability discrimination claim under the ADA, a plaintiff must demonstrate '(1) that he or she is a disabled person within the meaning of the ADA; (2) that he or she is qualified; and (3) that the employer terminated him or her because of the disability.'" *Id.* (quoting *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995)). Age discrimination under the HRA also borrows from federal law: "(1) plaintiff is a member of the protected group, (2) plaintiff was qualified to continue in the position; (3) plaintiff's employment was terminated, and; (4) plaintiffs [sic] position was filled by someone not a member of the protected class." *Cates v. Regents of N.M. Inst. of Min. & Tech.*, 954 P.2d 65, 70 (N.M. 1998) (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir. 1988)). The Tenth Circuit has indicated that the fourth element of this test may be replaced by a more flexible standard, that is, a showing of "circumstances giving rise to an inference of discrimination." *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).

If the employer succeeds in articulating a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts to the plaintiff to show that the proffered justification is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *see York Int'l Corp.*, 45 F.3d at 361 n.6 (explaining when to apply a *McDonnell* burden-shifting analysis in the context of the ADA). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and

acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004).

Plaintiff has not stated a prima facie case of disability discrimination. For instance, he admits in his own pleadings that he was terminated because he was accused of theft of prescription medicine. *See* Pl.'s Resp. at 10 (Doc. 54). Although Plaintiff claims this reason was pretextual, and he was in fact terminated for illegitimate motives, he offers no evidence of that. The closest Plaintiff comes to articulating disability discrimination by any of Defendants' employees is the argument that the District Pharmacy Supervisor Andrew Bustos "intentionally ignored the connection between [Plaintiff's] illness and his forgetfulness" that led to the alleged theft. Even if this were indicative of disability discrimination, which is doubtful, it amounts to a bare allegation in the pleadings, unsupported by any evidence from the record admissible at trial, insufficient to survive a motion for summary judgment.

Nor has Plaintiff stated a prima facie case of age discrimination. He has no evidence of circumstances giving rise to an inference of discrimination, such as being replaced by a younger person with no disabilities. Thus, his discrimination claims fail on the merits, and Plaintiff cannot succeed in showing that his termination violated New Mexico public policy.

B.  Accusations of Theft

Plaintiff's second public policy argument relies on the allegation that Defendants falsely accused him of theft without establishing that he had the intent to steal. Even if this were true, such an action does not amount to a violation of New Mexico public policy. Discharging an employee suspected or accused of theft is an acceptable practice under the at-will employment doctrine, even if the employer has no evidence of the theft or the employer is mistaken. *See, e.g.*, *Zuniga v. Sears, Roebuck & Co.*, 671 P.2d 662 (N.M. Ct. App. 1983) (no violation of public

policy where discharge was based on allegedly erroneous belief that employee stole merchandise from the store). Thus, Plaintiff has failed to put forth a material issue of fact that would establish a claim for wrongful discharge, and Defendants are entitled to summary judgment on this issue as a matter of law.

## II.     Defamation

In New Mexico, the tort of defamation has the following nine elements: 1) the defendant published a communication to a third person; 2) the communication contained a statement of fact; 3) the communication concerned the plaintiff; 4) the statement of fact was false; 5) the communication was defamatory; 6) the persons receiving the communication understood it to be defamatory; 7) the defendant knew that the communication was false or negligently failed to recognize that it was false; 8) the communication proximately caused actual injury to plaintiff's reputation; and 9) the defendant abused its privilege to publish the communication. *See Fikes v. Furst*, 81 P.3d 545 (N.M. 2003).

Plaintiff identifies several different communications by Defendants that he claims were defamatory. The bulk of his claim concerns first, a report to a national database of prospective employers aggregated by ChoicePoint regarding the circumstances of Plaintiff's termination, and second, a report to the New Mexico Board of Pharmacy concerning the same. Buried in the middle of his statement of facts, Plaintiff also asserts that Defendants' disclosure to its store employees concerning Plaintiff's termination constitutes "slander," although he neglects to develop this argument. Pl.'s Resp. at 13. At one point, Plaintiff also seems to claim that the arguments in Defendants' Motion for Summary Judgment filed in this case constitute "ongoing defamation." Pl.'s Resp. at 20. The Court finds that the communications described do not amount to defamation.

A.     ChoicePoint Report

This communication cannot constitute defamation because the statements made therein were not false. As Defendants point out, they cannot be held liable for reporting that they terminated Plaintiff for removing prescription medicine from the store without paying for it, if that in fact happened. It is a matter of undisputed fact that Plaintiff has admitted that he removed prescription medicine from the store, that he did not have a prescription for it, and that he did not pay for it. *See* Defs.' Motion Exhibit D (Doc. 51) (Plaintiff's written statement). For these reasons, Plaintiff was terminated from his employment. *See* Pl.'s Resp. at 10 (Doc. 54). Defendants' communications to ChoicePoint relate the incident in some detail, and state that he was terminated for "employee theft." *See* Pl.'s Resp. Exhibit I (Doc. 51).

Plaintiff claims that Defendants falsely accused him of criminality when they published the term "theft," even though they had no evidence he harbored any intent to steal. He argues that "a criminal 'intent to steal' is implicit in the publishing of the term 'theft.'" Pl.'s Resp. at 18 (Doc. 51). This argument has no merit. Theft is actionable under either criminal or civil law, meaning it cannot possibly be the case that all forms of "theft" are inevitably criminal. Accidental misappropriation of property from a store routinely leads that store to accuse a person of theft, whether or not the store believes that person possessed the intent to permanently deprive the store of its property. Furthermore, Defendants' report makes no claims regarding Plaintiff's mental state; quite the opposite, in fact. It relays several times that Plaintiff stated he had "accidentally" taken the medicine, and that he had "forgotten" that the medicine was in his pocket when he left. *See* Pl.'s Resp. Exhibit I at 1 (Doc. 51). In short, Defendants included nothing in the report that Plaintiff has shown to be false, including the fact that Plaintiff was terminated for "employee theft." Plaintiff has therefore not created a material issue of disputed

fact concerning the ChoicePoint communication.

      B.      <u>Board of Pharmacy Report</u>

The report to the New Mexico Board of Pharmacy contains statements that are privileged and therefore not defamatory. A communication affecting the public interest made to a party authorized to take action if the defamatory statement is true is conditionally or qualifiedly privileged. *See Gregory Rockhouse Ranch v. Glenn's Water Well Serv.*, 191 P.3d 548, 555-56 (N.M. Ct. App. 2008) (applying Restatement (Second) of Torts § 598 (1977)). As Defendants correctly point out, the Board is a state agency with law enforcement authority, and the Board is authorized to take action to "enforce the provisions of all laws of the state pertaining to the practice of pharmacy." NMSA 1978, § 61-11-6(A)(1)(7). Statements made to the Board in its law enforcement capacity affect the public interest in proper enforcement of pharmacy regulations, and such statements are privileged unless they exceed the scope of that privilege. *Gregory Rockhouse Ranch*, 191 P.3d at 557. Plaintiff has not specifically alleged, much less pled any facts tending to show, that Defendants abused the privilege in this case. Therefore, Defendants' report to the Board does not render them liable for defamation.

      C.      <u>Other statements</u>

Although they are not developed, the Court will also consider Plaintiff's arguments concerning other allegedly defamatory statements: Defendants' communication to its employees regarding Plaintiff's termination; and Defendants' arguments in briefs filed with this Court. Neither of these constitute defamation.

New Mexico recognizes a qualified privilege for intracorporate communication, meaning that statements made by an employer to its employees are shielded "when they act in good faith in furtherance of corporate goals, but [not] . . . if they use corporate power simply to serve their

own, personal ends." *Hagebak v. Stone*, 61 P.3d 201, 205 (N.M. Ct. App. 2002). Plaintiff, again, has not created a material issue of fact with regard to whether the statements made by Defendants' employees to other employees exceeded the scope of this privilege. Communication regarding why another employee was terminated is an appropriate use of corporate speech in this case, and it is not even clear that Plaintiff really argues the point.

Defendants' statements made in the course of this litigation are absolutely privileged. "Absolute immunity is accorded to attorneys for defamation reasonably related to communication preliminary to, in the institution of, or during the course and as a part of judicial proceedings in which the attorney participates as counsel." *Candelaria v. Robinson*, 606 P.2d 196, 199 (N.M. Ct. App. 1980). These statements cannot under any circumstances give rise to a claim for defamation. In sum, there is no disputed issue of material fact as to whether any of Defendants' statements in regard to Plaintiff's termination constitute defamation, and Defendants are entitled to judgment as a matter of law.

## III.     Intentional Infliction of Emotional Distress

In order to establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show that (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the plaintiff's mental distress. *Trujillo*, 41 P.3d at 342. Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (citing Restatement (Second) of Torts § 46 cmt. d). As a threshold matter, a trial court must determine whether, as a matter of law, the conduct at issue may reasonably be

regarded as sufficiently extreme and outrageous as to permit recovery under the tort of IIED. *Id.* at 343. If reasonable persons could differ on the question, the issue whether the conduct is sufficiently extreme and outrageous is for the jury. *Id.*

Plaintiff lists two types of behavior on the part of Defendants that he claims rise to the level of "extreme and outrageous" conduct: reporting the reasons for Plaintiff's termination to a private subscription database run by ChoicePoint, and engaging in a "pattern of discrimination" against Plaintiff with the knowledge that Plaintiff was ill and therefore emotionally and physically vulnerable. Plaintiff's only attempt to establish extreme and severe mental distress, however, is to allege that he has had trouble finding work since he was fired by Defendants. Pl.'s Resp. at 22-23 (Doc. 54). As a matter of law, these allegations do not suffice to establish the elements of IIED.

Plaintiff's claims boil down to being upset at his termination, and his subjective belief that he was discriminated against because of his age and disability. As discussed above in regard to his wrongful termination claim, Plaintiff has no actual evidence of discrimination in the workplace prior to or during his termination. Furthermore, "[b]eing fired is a common occurrence that rarely rises to the level of being 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community.'" *Trujillo*, 41 P.3d at 343. Nor has Plaintiff established, beyond bare allegations in his brief, that Defendants took any of these actions intending to inflict severe emotional distress on Plaintiff, or with reckless disregard as to the consequences.

The undisputed facts on the record show that Plaintiff has not established that he has suffered "severe and extreme" emotional distress. *Cf. Trujillo*, 41 P.3d at 343 (stress and depression due to loss of employment not sufficient to support tort of IIED). "The law intervenes

only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Id*. (internal quotes and citations omitted). The Court does not dispute that Plaintiff has experienced a large degree of emotional distress due to the accusation of theft, his belief that he was discriminated against, the loss of his employment, and his struggle to find new employment. His situation, however, is not unreasonably severe. Thus, his claim for IIED fails as a matter of law.

## CONCLUSION

Plaintiff has failed to create a genuine issue of material fact as to any of his claims. Accordingly, Defendants are entitled to judgment on those claims as a matter of law.  For the reasons given above, the Court GRANTS Defendants' Memorandum Motion for Summary Judgment on All Claims.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE